**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION**

| | | |
|---|---|---|
| **RACHEL MASSEY** | § | |
| | § | **CIVIL ACTION NO: 2:25-cv-00120** |
| **v.** | § | **JURY DEMAND** |
| | § | |
| **DORSA FAMILY DENTISTRY, PLLC** | § | |
| **d/b/a PADRE ISLAND FAMILY** | § | |
| **DENTISTRY and SOPHI NABVI** | § | |

**DEFENDANTS' RESPONSE IN OPPOSITION TO
PLAINTIFF'S MOTION FOR § 216(b) CERTIFICATION
AND NOTICE TO THE PUTATIVE COLLECTIVE MEMBERS**

**TO THE HONORABLE UNITED STATES DISTRICT JUDGE:**

**NOW COME** Defendants Dorsa Family Dentistry, PLLC *d/b/a* Padre Island Family

Dentistry ("DFD") and Sophi Nabavi (collectively, "Defendants"), respectfully submitting this

Response in opposition to Plaintiff Rachel Massey's Motion for § 216(b) Certification and Notice

to the potential Putative Collective Members (ECF No. 34) (the "Motion"), and showing unto this

Honorable Court as follows:

### I.      INTRODUCTION & PROCEDURAL BACKGROUND

Plaintiff filed this action on May 8, 2025, alleging that Defendants violated the FLSA by

failing to pay overtime when she worked at two offices in the same workweek. (ECF No.1).

Plaintiff seeks to certify a collective under 29 U.S.C. § 216(b) and send court-authorized notice to

similarly situated workers ("Putative Collective" or "Putative Collective Members"), defined as:

> ALL CURRENT AND FORMER HOURLY EMPLOYEES WHO WORKED
> FOR DORSA FAMILY DENTISTRY PLLC, D/B/A PADRE ISLAND FAMILY
> DENTISTRY AND SOPHI NABAVI, ANYWHERE IN THE STATE OF
> TEXAS, AT ANY TIME FROM MAY 7, 2022, THROUGH THE FINAL
> DISPOSITION OF THIS MATTER.[1]

---

[1] Motion at 1.

Plaintiff's evidence in support of her Motion consists of: (1) her own one-witness declaration (Motion; Ex. A); (2) Defendants' discovery responses identifying twenty (20) employees, with only six of whom worked across both office addresses at some point during the limitations period (Motion; Ex. B); (3) two photographed time sheets for a single two-week pay period in April 2024 (Motion; Ex. C); and (4) two payroll-journal extracts for that same window (Motion; Exs. D, E). Plaintiff's Motion advances no declaration, affidavit, or written statement from any of the other nineteen employees Plaintiff seeks to join. To date (to Defendants' knowledge) no other DFD employee or former employee has filed a notice of consent to join.

Plaintiff acknowledges in her own Motion that the proposed collective as defined in the Complaint is overbroad. She concedes that hourly employees who did not work at both offices, and employees who were "paid by other methods" than an hourly rate, are "not properly included in the collective."[2] These concessions narrow the class on paper but do nothing to identify which of the other nineteen potential putative members actually fit the proposed criteria – a determination that itself requires individualized review.

By way of uncontested history, DFD was founded by Mehran Vatankhah in 2012. Between 2020 to the present, DFD employed approximately 20 employees. Mr. Vatankhah and Defendant, Dr. Sepideh "Sophie" Nabvi, were previously married and their divorce was finalized on April 24, 2024. When Rachel Massey ("Massey") was hired in 2022 by Ron, she was properly hired as a salaried employee.[3] As such, in 2023, Massey was earning approximately $3,500.00[4] per pay period. In or about April of 2023, Massey began "splitting" her time between DFD's main clinic

---

[2] Motion at 9 n.4 (acknowledging that some Putative Collective Members were paid by methods other than an hourly rate and stating that those employees "are not properly included in the collective").

[3] Massey met all tests for the FLSA's Administrative Exemption during her entire employment with Family Dentistry.

[4] Subject to certain bonuses and commissions.

("Dorsa") and the Island clinic ("Island"). Including Massey, only six of DFD's employees ever worked at/for both clinics at any given point in time. As a result of working for both clinics, Massey's salary was split between the clinics 60/40, with 60 percent of her salary being paid by Dorsa and 40 percent by Island. About one year later, Dr. Nabvi took over both clinics. In March of 2024, Family Dentistry's payroll group began paying Massey hourly in lieu of her salary, at a rate of $47.50.[5]

On January 12, 2021, the Fifth Circuit decided *Swales v. KLLM Transp. Servs., L.L.C.*, 985 F.3d 430 (5th Cir. 2021) and redefined the class certification test for FLSA collective actions, rejecting the Lusardi test. The collective action test is determined by whether employees are "similarly situated."[6] Plaintiff seeks a notice and certification process for ALL hourly employees. A review of DFD's employee report shows that Massey's position with DFD was unique, as she was the only Dental Hygienist who also worked as DFD's Office Manager. Additionally, Massey was the only employee who reported to Dr. Nabvi, while all other employees reported directly to Massey. Massey was a unicorn who worked in a hybrid position between both clinics. The only other five employees who also worked at both clinics – one receptionist, two front office staff, a dental assistant and a dentist (salary/exempt) – were neither Dental Hygienists nor Managers, and certainly no one other than Massey has ever been both. Plaintiff's Motion now asks this Court to do exactly what the Fifth Circuit told district courts not to do: rubber-stamp a sweeping notice to EVERY hourly employee at Defendants' small dental practice based on a single declarant's self-serving narrative and a handful of pay stubs. After *Swales v. KLLM Transportation Services, L.L.C.*, "a district court must rigorously scrutinize the realm of 'similarly situated' workers . . .

---

[5] What is interesting is that it was Massey herself, without any authority (not Dr. Nabvi) who instructed the payroll group to make this change.

[6] *Swales*, 985 F.3d at 441-441.

from the outset of the case," "Only then can the district court determine whether the requested opt-in notice will go to those who are **actually similar** to the named plaintiffs (**emphasis added**)."[7] Here, Massey has no comparator(s) and Plaintiff has not carried the Fifth Circuit's high burden set forth in *Swales*, thus Plaintiff's Motion should be denied.

## II.    LEGAL STANDARD

The FLSA permits collective actions only by employees who are "similarly situated."[8] In *Swales*, the Fifth Circuit jettisoned the lenient two-step *Lusardi* framework and replaced it with a one-step inquiry that demands the district court to rigorously scrutinize the realm of "similarly situated" workers, and must do so *from the outset* of the case.[9] To determine, then, whether and to whom notice should be issued in this case, the district court needs to consider all of the available evidence.[10] After considering all available evidence, the district court may conclude that the Plaintiffs and Opt-ins are too diverse a group to be "similarly situated," which is Plaintiff's burden to establish.[11] Critically, *Swales* requires the district court to determine whether the merits questions can be answered *collectively*.[12] Where, as here, individualized inquiry is needed to determine whether each putative member was even subjected to the alleged practice – much less injured by it – certification is therefore improper.

---

[7] *Swales v. KLLM Transp. Servs., L.L.C.*, 985 F.3d 430, 434 (5th Cir. 2021).

[8] 29 U.S.C. § 216(b).

[9] *Swales*, 985 F.3d at 434.

[10] *Id*. at 442.

[11] *Id*. at 443.

[12] *Id*. at 442 (the central question is "whether merits questions can be answered collectively").

### III.    ARGUMENTS & AUTHORITIES

Three independent defects in Plaintiff's Motion require denial. **First**, Plaintiff has not identified any common, unlawful policy that ties the putative members together. Plaintiff's Motion conflates a routine business practice – operating two offices and tracking time at each – with an FLSA violation. Plaintiff's own evidence shows that the question of whether any given employee "split" hours, worked over forty hours in a workweek and was actually underpaid requires an employee-by-employee, week-by-week, and office-by-office inquiry. **Second**, whether the two offices were a "single enterprise" under the FLSA – the linchpin of Plaintiff's liability theory – is itself a contested factual question that cannot be resolved on a class-wide basis on this record. **Third**, Plaintiff's evidence is far too thin to satisfy *Swales*'s heightened standard. Plaintiff's Motion rests almost entirely on Plaintiff's own declaration; it has now been over one year since this case was filed and no other current or former employee has joined.

Massey's (#1) positions of employment with DFD were as follows:

- Full Time Dental Hygienist performing management duties from 11/17/22 – 7/10/23, earning a weekly salary ranging from $1,387.50 to $1,520.00;

- Full Time Dental Hygienist performing management duties from 7/10/23 – 11/3/23, earning an hourly wage of $47.50;

- Full Time Office Manager and Part Time Dental Hygienist from 11/3/23 – 10/12/24, earning an hourly wage of $47.50;

- Full Time Dental Hygienist and Part Time Office Manager from 10/12/24 – 11/22/24, earning an hourly wage of $31.00 (Office Manager) and $47.50 (Dental Hygienist).

During the relevant time period, DFD's other employees were as follows:[13]

(Full Time)

| Employee Number | Position/Title | Location | Rate | Dates of Employ |
|---|---|---|---|---|
| • #2: | Front Office | Island. | $18.00 | 3/2/20-6/23/22 |
| • #3: | Front Office Receptionist | Island. | $18.00 | 7/26/22-10/6/22 |

---

[13] The Employee Numbers were "assigned" by counsel for Defendants for convenience of the parties.

| | | | | |
|---|---|---|---|---|
| • #4: | Dental Assistant | Island. | $17.00 | 11/13/23-current |
| • #5: | Front Office Receptionist | Both | $20.00 | 7/4/23-8/31/23 |
| • #6: | Dental Assistant | Dorsa | $15.00 | 4/4/224-5/14/24 |
| • #7: | Dental Assistant | Dorsa | $17.00 | 1/2/19-1/10/23 |
| • #8: | Front Office | Both | $15.00 | 9/26/23-11/21/23 |
| • #9: | Office Manager | Island | $15.00 | 2/8/22-6/16/22 |
| • #10: | Front Office/Office Manager | Dorsa | $13.00+Bonus | 11/14/22-4/1/24 |
| • #11: | Front Office | Dorsa | $13.00 | 8/24/20-4/5/23 |
| • #12: | Dental Assistant | Both | $13.00 | 12/12/23-7/18/25 |
| • #13: | Dental Assistant | Island | $15.00 | 3/21/23-5/18/22 |
| • #20 | Dentist | Both | Salary | |

(Part Time)

| | | | | |
|---|---|---|---|---|
| • #14: | Dental Hygienist | Island | $35.00 | 1/5/22-11/20/22 |
| • #15: | Dental Hygienist | Island | $35.00 | 2/13/22-6/21/22 |
| • #16: | Receptionist | Island | $13.00 | 1/1/22-11/1/22 |
| • #17: | Treatment Coordinator | Island | $18.00 | 8/16/22-8/18/22 |
| • #18: | Front Office | Both | $17.00 | 1/2/22-12/11/23 |
| • #19: | Receptionist | Island | $18.00 | 11/14/22-12/12/22 |

## A.      Plaintiff Fails to Identify a Common, Unlawful Policy or Plan

As Plaintiff points out, several courts have held that the relevant inquiry is whether the plaintiff has sufficiently shown that other current and former employees were together the victims of a single decision, policy, or plan that violated the FLSA.[14] "The key consideration is that to be similarly situated, there must be 'substantial allegations that potential members were together the victims of a single decision, policy, or plan.'"[15] The cornerstone of any FLSA collective action is a "single decision, policy, or plan" that, if proven, would establish liability as to every member. Here, Plaintiff has not identified one.

Plaintiff's theory, distilled, is that Defendants "split" employees' time between two offices to avoid paying overtime. But operating multiple work locations is not unlawful. Tracking hours at each location is not unlawful. Issuing separate paychecks corresponding to work at separate

---

[14] *Mooney v. Aramco Services*, 54 F.3d 1207, 1214 (5th Cir. 1995).

[15] *Caballero v. Kelly Servs., Inc.*, No. H-14-1828, 2015 U.S. Dist. LEXIS 137475, 2015 WL 12732863, at *3 (S.D. Tex. Oct. 5, 2015) (quoting *McKnight v. D. Hous., Inc.*, 756 F. Supp. 2d 794, 801 (S.D. Tex. 2010)).

addresses is not unlawful. What is unlawful is failing to pay overtime when an FLSA-covered employee, whose hours are properly aggregated across that employer's related operations, actually exceeds forty hours in a single workweek.[16]

Plaintiff's pleading conflates these distinct concepts. Plaintiff's Motion does not point to a written policy, training, manual, payroll directive, or any other class-wide artifact reflecting a common decision to deny overtime. Instead, Plaintiff offers a single example – one two-week period in April 2024 in which *she* allegedly worked 90.7 combined hours across both offices.[17] Even taking that example at face value, it proves nothing about the other nineteen potential putative members. It does not show whether any of them:

- worked at both offices in the same workweek;

- worked more than forty combined hours in any workweek;

- were paid on an hourly (rather than salaried, commission, per-diem, or stipend) basis during the relevant period;

- performed the same duties as Plaintiff or duties that warrant aggregating their time;

- were properly classified as non-exempt; or

- would, on their own facts, be victims of any unlawful practice.

Each of those questions must be answered employee-by-employee and workweek-by-workweek. That is the antithesis of the demonstrated similarity *Swales* requires.[18] In footnote 4 of the Motion,[19] Plaintiff acknowledges that Defendants' payroll records reveal that some putative

---

[16] 29 U.S.C. § 207(a)(1) (overtime obligation triggered only when a non-exempt employee works "a workweek longer than forty hours").

[17] Motion at 5.

[18] *Swales*, 985 F.3d at 443.

[19] Motion at 9 n.4.

members were "paid by other methods" than an hourly rate – and that those individuals "are not properly included in the collective."[20] In footnote 5, Plaintiff likewise concedes that only individuals who actually worked at both offices in at least one workweek belong in the collective.[21] Identifying which employees satisfy those criteria, however, cannot be done on a class-wide basis. It requires reviewing the individual time and payroll records of each of the twenty employees Defendants identified—a process indistinguishable from adjudicating each individual's claim. Where a court must conduct individualized review just to determine the boundaries of the collective, Plaintiff has not established the threshold similarity *Swales* demands.

The diversity of job duties further defeats Plaintiff's common-policy theory. Plaintiff was a Dental Hygienist—a licensed clinical role with patient-care responsibilities. The proposed collective sweeps in front-desk receptionists, dental assistants, and any other hourly worker, regardless of training, scheduling, or supervision. Plaintiff effectively concedes that the duties differ, arguing only that those differences are immaterial because, in her view, the alleged "split" practice applied uniformly.[22] But that argument assumes the very thing Plaintiff must prove: that a single, unlawful practice was applied uniformly across positions. The record contains no such proof.

Lastly, Defendants would stipulate (and informed Plaintiff and her counsel from the outset) (see *Exhibit A*) that Massey worked approximately 123 hours of overtime without being paid the half-time differential. The reason being that DFD capped Massey's hours at 40 per week because it could not afford to pay her overtime wages. As a result of Massey purportedly needing the extra

---

[20] Motion at 9 n.4.

[21] Motion at 12 n.5.

[22] See Motion *generally*.

income, she and Dr. Nabvi reached an agreement for Massey to work overtime without being paid the half-time differential, which was memorialized in writing by Massey (see *Exhibit B*), and which Dr. Nabvi did not realize violated the FLSA.

**B.    The "Single Enterprise" Question Underlying Plaintiff's Theory Is a Contested, Individualized Issue That Cannot Be Resolved Collectively**

Plaintiff's liability theory rests on the premise that the two offices must be treated as a single FLSA enterprise so that hours worked at each are aggregated for overtime purposes. Defendants do not concede that premise. The FLSA defines an "enterprise" as "the related activities performed (either through unified operation or common control) by any person or persons for a common business purpose."[23] While the "FLSA contemplates that a covered enterprise may be comprised of separate establishments whose financial transactions are separately accounted for, or whose business is conducted with that degree of independence in day-to-day operational management which is normally characteristic of physically separated establishments or multiple organizational units."[24] Whether Dorsa and Island constitute a single enterprise is a question of law.[25] To establish that two entities functioned as a single enterprise, Plaintiff must demonstrate that the entities: (1) engaged in related activities; (2) were a unified operation or under common control; and (3) shared a common business purpose.[26] Because Massey cannot establish these elements, her single enterprise theory fails.

---

[23] 29 U.S.C. § 203(r)(1) (defining "enterprise" as "the related activities performed (either through unified operation or common control) by any person or persons for a common business purpose").

[24] *Shultz v. Mack Farland & Sons Roofing Co.*, 413 F.2d 1296 (5th Cir. 1969).

[25] *Reich v. Bay, Inc.*, 23 F.3d 110, 114 (5th Cir. 1994).

[26] *Id.* at 114.

Plaintiff's own evidence reflects that the offices were treated as separate operating units for payroll purposes. Two separate payroll journals were maintained—one labeled "Padre Island Family Dentistry" (Motion; Ex. D) and another labeled "Dorsa Family Dentistry PLLC" (Motion; Ex. E)—and Plaintiff received separate paychecks from each. Plaintiff treats those facts as proof of an unlawful "split." But they are equally consistent with two related but distinct operations whose employees might or might not have been jointly employed in any given week. That contested merits question cannot be answered "in one stroke" for twenty different employees over a multi-year period.[27]

Even if the Court were ultimately to find a single enterprise after a fully developed evidentiary record, that would not justify pre-discovery, class-wide notice. *Swales* requires more than the possibility that common questions exist; it requires a present demonstration that the merits *can* be resolved collectively. Where the threshold liability premise itself depends on a fact-intensive inquiry into the operational realities of the employer – and where those realities may have changed over the multi-year proposed period – collective treatment is inappropriate.

## C.    Plaintiff's Single-Declarant Record Is Insufficient Under Swales

Plaintiff seeks certification on a record that is conspicuously thin. The factual support consists of: (1) her own declaration; (2) discovery responses listing twenty potential employees; and (3) selected payroll documents covering a single two-week period. She offers no declarations or affidavits from any of the other nineteen putative members.

Various courts require a plaintiff seeking conditional certification to present evidence of other similarly situated individuals who want to opt into the lawsuit.[28] As a result, a single self-

---

[27] *Swales*, 985 F.3d at 442.

[28] See *Jones v. Xerox Commercial Sols., LLC*, Civil Action No. 4:13-cv-650, 2013 U.S. Dist. LEXIS 158793, 2013 WL 5945652, at *4 n.43 (S.D. Tex. Nov. 6, 2013) (citing *Dybach v. State of Fla. Dept. of Corr.,* 942 F.2d 1562, 1567-

serving declaration cannot carry the day, particularly where (as here) it speaks only to the declarant's own experience and offers no admissible foundation for assertions about the working conditions, schedules, hours or pay practices of others. Plaintiff's declaration repeatedly speaks generally about "the Putative Collective Members" without explaining how she has personal knowledge of, for example, what schedules every front-desk employee or dental assistant worked in every workweek across multiple years. That kind of conclusory declaration is precisely what *Swales* was designed to filter out.[29]

The absence of opt-in plaintiffs is also probative. The case has been pending for over one year. If, as Plaintiff insists, every hourly worker at Defendants' small practice had been subjected to a uniform unlawful policy, one would expect at least some independent corroboration to have surfaced by now. None has. That silence underscores the speculative nature of Plaintiff's class-wide theory and confirms that pre-certification discovery, not notice, is the appropriate next step if the case is to proceed at all.

## D.   Defendants' Defenses Are Individualized, Not Class-Wide

The second *Swales* factor – whether defenses are individualized or amenable to class-wide resolution – also weighs heavily against certification. Among other defenses, Defendants will assert as to each potential putative member, individually:

- Whether the individual was actually employed jointly by Dorsa and Island during the workweeks at issue, or only by one operating unit;

---

68 (11th Cir. 1991); *Haynes v. Singer Co.*, 696 F.2d 884, 887 (11th Cir. 1983); *Simmons v. T-Mobile USA, Inc.*, 2007 U.S. Dist. LEXIS 5002, 2007 WL 210008, *9 (S.D. Tex. Jan. 24, 2007); *H & R Block, Ltd. v. Housden*, 186 F.R.D. 399, 400 (E.D. Tex. 1999).).

[29] *Swales*, 985 F.3d at 443.

- Whether the individual was paid on an hourly basis (Plaintiff concedes some were not);

- Whether the individual was correctly classified as non-exempt;

- Whether the individual actually worked more than forty combined hours in a given workweek;

- Whether the individual received any premium pay, bonuses, or other compensation that satisfies the FLSA's overtime obligation when properly attributed;

- Whether any unpaid time was de minimis or otherwise not compensable; and

- Whether any claim is time-barred under the two-year limitations period absent a separately proven willful violation.

Each of these defenses turns on individualized facts – an employee's schedule, payroll status, and workweek-specific hours. Resolving them in a single proceeding would require, in effect, a series of mini-trials. That is not collective treatment; it is the unmanageable individualized litigation *Swales* warned against.[30]

## E.     Fairness and Procedural Considerations Favor Denial

Plaintiff invokes the FLSA's remedial purpose, but that purpose is not a license to authorize broadcast notice in every wage case. The Supreme Court has made clear that courts must facilitate timely, accurate and fair notice."[31] The proposed collective – as pleaded – encompasses all hourly workers regardless of position, schedule or whether they ever worked a single hour at both offices. Sending notice to such a broad and ill-defined group invites opt-ins from individuals who have no viable claim and burdens both the parties and the Court.

---

[30] *Id.* at 443 (rejecting the lenient *Lusardi* standard).

[31] *Hoffmann-La Roche Inc. v. Sperling*, 493 U. S. 165, 170, 110 S. Ct. 482 L. Ed. 2d 480 (1989).

The smallness of Defendants' practice cuts the opposite way from how Plaintiff frames it. Plaintiff argues the small size makes collective treatment efficient. In reality, with only twenty potential members – several of whom Plaintiff already concedes do not belong – case-by-case adjudication is entirely manageable, and any individuals with meritorious claims can pursue them individually or through joinder under Rule 20. There is no need for the procedural machinery of collective treatment, much less broad-form notice, where the universe of potential plaintiffs is so small and is already identified.

**F.    Plaintiff's Proposed Notice and Notice Plan Are Overbroad and Should Be Substantially Narrowed**

Even if the Court were inclined to authorize any notice, Plaintiff's proposed scope and method – three years, ALL hourly employees in ANY capacity, three forms of notice, and a reminder – is overbroad in every respect and should be substantially narrowed.

### *1.    The Proposed Three-Year Look-Back is Unsupported*

FLSA claims are subject to a two-year limitations period; the three-year period applies only "for a cause of action arising out of a willful violation."[32] Plaintiff has not made a willfulness showing. Her evidence of willfulness consists of conclusory assertions in her declaration. Additionally, Dr. Nabvi genuinely, but mistakenly, believed that her generosity – paying Massey for what was basically unlimited hours – was not a violation of the FLSA because Massey agreed to waive the half-time differential as a result of Massey requesting to accumulate additional hours to "get paid more." Notice should therefore be limited, at most, to a two-year period from the date the case was filed.

---

[32] 29 U.S.C. § 255(a) (two-year statute of limitations for FLSA claims; three years only "for a cause of action arising out of a willful violation").

### 2. *The Collective Definition Should be Narrowed to Those Who Actually Worked at Both Offices and Over Forty Combined Hours*

Even Plaintiff concedes that hourly employees who did not work at both offices in at least one workweek are not proper Collective Members,[33] and that employees not paid on an hourly basis should be excluded.[34] Any notice the Court authorizes should reflect those concessions on its face: it should be sent only to individuals (a) in the role of Dental Hygienist and/or Office Manager (or both), (b) paid on an hourly basis, (b) who worked at both Dorsa and Island offices in at least one workweek, and (c) whose combined hours in that workweek exceeded forty.

### 3. *First-Class Mail is Sufficient; Text-Message Notice and Reminders are Unnecessary and Intrusive*

Defendants do not object to first-class mail and email notice, both of which are routine in this Circuit. Text-message notice, however, is intrusive, raises authentication and verification problems, and is unnecessary here given the small size of the putative collective. A reminder notice is likewise unnecessary – and counterproductive – in a small-collective case where one round of mail and email will reach every putative member. The reminder request should be denied.

### 4. *The Opt-in Period Should be 45 days, not 60*

A 45-day opt-in period is consistent with the routine practice in this District and is sufficient given the small, easily reachable collective. A 60-day period is unnecessary and would unduly extend the litigation.

### 5. *The Proposed Notice Itself Contains Argumentative and Incomplete Language.*

Defendants reserve the right to identify and propose specific edits to the language of Plaintiff's proposed Notice and Consent forms (Motion; Ex. F) and proposed Order (Motion; Ex.

---

[33] Motion at 12 n.5.

[34] Motion at 9 n.4.

G) if and only if the Court grants any relief. Plaintiff's proposed forms describe the lawsuit in one-sided terms and should be revised to: (i) state Defendants' position as well as Plaintiff's; (ii) clearly disclose that opt-in plaintiffs may be required to participate in discovery, including depositions; (iii) clearly disclose the potential for fee or cost obligations; and (iv) remove the text-message link and reminder language.

## IV.    CONCLUSION

Plaintiff asks this Court to authorize sweeping notice to every hourly worker at Defendants' small dental practice on the strength of a single self-serving declaration, a two-week snapshot of one employee's timesheets and a liability theory built on contested, fact-intensive premises. That is precisely the outcome the Fifth Circuit foreclosed in *Swales*.

Plaintiff has not carried her burden. She identifies no common, unlawful policy; her own concessions confirm that determining who even belongs in the collective requires an employee-by-employee, workweek-by-workweek review of payroll status, work location, combined hours, and exemption classification. Her liability theory depends on a contested "single enterprise" question that turns on the operational realities of two clinics whose ownership and management changed during the proposed period, and her defenses – joint employment, classification, exemption, weekly hours, offsets, willfulness and limitations – are each individualized. After more than a year, no other employee has submitted a declaration or filed a consent. None of these questions can be answered "in one stroke," and resolving them would devolve into a series of mini-trials rather than a single collective adjudication.

Denial will not prejudice any worker with a meritorious claim – the universe of potentially affected employees is small, fully identified, and easily reached, and any individual may pursue a

claim individually or through permissive joinder. Should the Court nevertheless authorize any notice, the relief must be substantially narrowed for the reasons stated above.

**WHEREFORE**, premises considered, Defendants Dorsa Family Dentistry, PLLC *d/b/a* Padre Island Family Dentistry and Dr. Sophi Nabavi respectfully request that this Court: (1) **DENY** Plaintiff's Motion for § 216(b) Certification and Notice to the Putative Collective Members in its entirety; (2) in the alternative, if the Court is inclined to grant any relief, **SUBSTANTIALLY NARROW** the scope, definition, content, and method of any authorized notice consistent with the limitations set forth above; and (3) grant Defendants such other and further relief, at law or in equity, to which they may show themselves justly entitled.

Respectfully submitted,
GALE LAW GROUP, PLLC
14633 S. Padre Island Dr.
Corpus Christi, Texas 78418
Phone: (361)808-4444
Fax: (361)232-4139

By: /s/ *Christopher J. Gale*
Christopher J. Gale
Southern District Bar No. 27257
Texas Bar No. 00793766
Email: Chris@GaleLawGroup.com
*Attorney-In-Charge for Defendants*
By: /s/ *Amie Augenstein*
Amie Augenstein
Southern District Bar No. 2236723
Texas Bar No: 24085184
Email: Amie@GaleLawGroup.com
*Attorney for Defendants*

## NOTICE OF ELECTRONIC FILING

The undersigned counsel hereby certifies that she has electronically submitted for filing a true and correct copy of the above and foregoing in accordance with the Electronic Case Files System of the Southern District of Texas on the 9th day of May, 2026.

/s/ *Amie Augenstein*
Amie Augenstein

16

## CERTIFICATE OF SERVICE

I hereby certify that on this the 9th day of May, 2026, the above and foregoing was sent to the following counsel of record by the means indicated below:

Clif Alexander                                      *Via E-file Notification*
Austin W. Anderson
Lauren E. Braddy
Carter T. Hastings
101 N. Shoreline Blvd, Suite 610
Corpus Christi, Texas 78401
Telephone: (361) 452-1279
Facsimile: (361) 452-1284


                                         /s/ *Amie Augenstein*
                                         Amie Augenstein

17